IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                             Criminal Action No.3:07CR94

JOSHUA BERKEY and
LINDSAY WILHELM,

    Defendant.

## REPORT AND RECOMMENDATION

On February 26, 2008, came the United States of America by Paul Camilletti, Assistant United States Attorney, and the Defendant, JOSHUA BERKEY, in person and by his counsel, Carmela Cesare, Esq. and the Defendant, LINDSAY WILHELM, in person and by her counsel, Brian Crockett, Assistant Federal Public Defender, for a hearing on a Motion to Suppress and Motion to Dismiss Indictment

## Procedural Background

Defendants Joshua Berkey and Lindsay Wilhelm are co-defendants in a (5) count indictment. They are charged with possession with intent to distribute in violation of Title 21, United States Code, Section 841(a)(1). Defendant Berkey is also charged with felon in possession in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) and possession of stolen firearms in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2) and possession of firearm with obliterated serial number in violation of Title 18, United States Code, Sections 922(k) and 924(a)(1)(B).

These motions to suppress stem from an arrest made on February 21, 2007. The officers involved in this case were pursuing leads on an arrest warrant for a Gabriel "Ziggy" McGuire, a fugitive wanted for armed robbery. During the officers visit to 513 Railroad Drive, a description

of McGuire was given to two of the occupants and they indicated that the person the officer was looking for was Lindsay Wilhelm's boyfriend and that he was upstairs. The officers pursued the arrest but after the man had been secured it was determined that the Defendant was not "Ziggy" McGuire but Defendant Joshua Berkey, who was then arrested for obstructing law enforcement and providing false information to state police.

## MOTIONS

**Defendant Berkey's Motion to Suppress Evidence and Dismiss Indictment [37]**

**Defendant Wilhelm's Motion to Suppress Evidence[38]**

### Contentions of the Parties

Defendants move to suppress evidence obtained during the February 21, 2007 search of Defendant Wilhelm's apartment at 513 Railroad Drive for "Ziggy" McGuire. The Defendants contend that Diana Wilhelm did not have authority to consent to the search of Defendant Wilhelm's apartment. And regardless that Defendant Lindsay Wilhelm revoked any consent given by Diana Wilhelm to search the home for "Ziggy" McGuire when she screamed at the officers to leave as they approached the second floor of the apartment. Defendants conclude that the evidence found incident to the arrest and seized later by search warrant should be suppressed. Further Defendant's contend that if the motion to suppress is granted, the indictment should be dismissed for lack of evidence.

The Government contends that the officers were given consent by Diana Wilhelm to enter 513 Railroad Drive to look for the fugitive "Ziggy" McGuire. After entering the home with consent of Diana Wilhelm, Deputy Marshal Stump described the fugitive to the occupants. Upon hearing Deputy Marshal Stump's description, Christina Wilhelm advised that a male

matching that description was upstairs. At that point, the information obtained created probable cause to suspect that the fugitive was in the home and an exigency of circumstances justifying immediate action by the police officers. Consent was no longer needed; therefore, any attempt to revoke it was meaningless at that point.

The Government called the following witnesses: Trooper See, Deputy Marshal Stump and Deputy Marshal Ulrich. The Defendant Berkey called the following witnesses: Diana Wilhelm and Christina Wilhelm. After hearing the testimony of the witnesses and weighing the credibility of the witnesses against the testimony. The Court makes the following findings of fact and conclusions of law regarding the Defendants' Motions to Suppress:

**Findings of Fact**

1. On February 21, 2007, at approximately 6:15am, Senior Trooper See of the West Virginia State Police accompanied by Deputy Marshals, Mike Ulrich and Ronald Stump, went to 513 Railroad Drive, Martinsburg, West Virginia to gather information in an attempt to execute an arrest warrant for a Gabriel "Ziggy" McGuire, which had been issued on February 16, 2007.

2. At 513 Railroad Drive, Trooper See and Deputy Marshal Stump proceeded to knock on the front door. Diana Wilhelm, mother of Defendant Lindsay Wilhelm, answered the door. Trooper See advised Diana Wilhelm that they were looking for Gabriel "Ziggy" McGuire, who was a fugitive from an armed robbery. Diana Wilhelm advised Trooper See that she was unfamiliar with a Mr. McGuire, and consented to the trooper's request to come inside and look for Mr. McGuire.

3. Diana Wilhelm is the forty seven (47) year old mother of Defendant Lindsay Wilhelm and witness Christina Wilhelm. She came to live with her daughter Lindsay, in Lindsay's apartment

at 513 Railroad Drive in June of 2006. She apparently got into an argument with her daughter and moved out for several months returning in October of 2006. Since October of 2006, Diana Wilhelm has been a co-occupant of 513 Railroad Drive. Although Diana Wilhelm spent most of her time on the first floor level of the apartment, it was reasonable for the officers to believe that Diana Wilhelm shared common authority over the apartment at 513 Railroad Drive on February 21, 2007 and had authority to consent to their search for Gabriel "Ziggy" McGuire.

4. The Court finds based upon the totality of the circumstances that consent given by Diana Wilhelm to search 513 Railroad Drive for Gabriel "Ziggy" McGuire, was knowing and voluntarily given.

5. Upon entering the apartment Trooper See checked the rear of the apartment while Deputy Marshal Stump described Mr. McGuire to the occupants, which included Diana Wilhelm and Christina Wilhelm, Diana Wilhelm's teenage son and several toddlers. Upon hearing Deputy Marshal Stump's description, Christina Wilhelm advised that a male matching that description was upstairs. Both women indicated that the man was Lindsay Wilhelm's boyfriend.

6. After learning that the fugitive from the armed robbery was upstairs, the officers had probable cause and exigent circumstances to proceed to the second floor to apprehend the fugitive who may have been armed and dangerous.

7. As the officers reached the top of the stairs, they were met by Lindsay Wilhelm who was screaming at them to leave and interfering with their execution of the arrest warrant. The officers directed Defendant Lindsay Wilhelm to go downstairs for her own safety and the safety of the officers trying to effectuate the arrest.

8. According to the Defendant's witnesses, when Lindsay Wilhelm came downstairs she was

upset at her mother, Diana Wilhelm, for allowing the officers in the apartment. The testimony at the hearing revealed that Diana Wilhelm did not like confrontation and she was dependant on her daughter Lindsay for a place to live.

9. Upon entering the upstairs bedroom, Trooper See perceived a man hiding in a closet. Senior Trooper See ordered the man out, but the man refused. Senior Trooper See ordered the subject to show his hands, which he did. Senior Trooper See removed the man from the closet and placed him under arrest. At this point the officer realized that the man was not Gabriel "Ziggy" McGuire.

10. The man stated his name was Angel Guzman from Mexico and that he was hiding from Ms. Wilhelm's father. These were lies; the man in the closet was Defendant Joshua Berkey. Defendant Berkey was arrested for obstructing law enforcement and providing false information to state police.

11. Incident to Defendant Berkey's arrest the officers made a cursory search for weapons within reach of the Defendant. The cursory search revealed three loaded firearms in the mattress of the bed and a duffle bag in the closet where Mr. Berkey was hiding that looked to contain some firearm parts. No property was seized during the arrest. Thereafter a search warrant was sought and issued. The firearms and controlled substances were seized pursuant to that search warrant.

12. The search incident to arrest was appropriate and proper.

13. The search warrant obtained thereafter was properly issued and executed.

## Conclusions of Law

A law enforcement officer cannot legally search the home of a third party for the subject of an arrest warrant without exigent circumstances or consent to enter the home. *Steagald v.*

*United States, 451 U.S. 204 (1981).* A search conducted pursuant to valid consent is a well recognized exception to the Fourth Amendment's general warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). In considering the validity of the consent here, the Court must determine based upon the totality of the circumstances whether consent was knowing and voluntary. *United States v. Mendenhall,* 446 U.S. 544 (1980, *United States v. Lattimore,* 87F.3d 647, 650 (4th Cir.1996). A third party with apparent authority over property may validly consent to its search. *United States v. Matlock*, 415 U.S. 164, 170 (1974). Even if the third party does not have actual authority, the search will be upheld if the officer reasonably believes the third party has authority to consent. *Illinois v. Rodriguez,* 497 U.S. 177 (1990).

Both Defendant's argue that *Georgia v. Randolph*, 547 U.S. 103 (2006), stands for the proposition that consent once given may be withdrawn by an occupant of the premises. Contending, that when Defendant Lindsay Wilhelm screamed at the officers to leave as they were coming upstairs, she was in effect revoking consent that had been given to the police at the threshold of the apartment by Diana Wilhelm, her mother.

The *Randolph* case is not factually similar to this one. In the *Randolph* case, the parties were married and going through a divorce. *Georgia v. Randolph*, 547 U.S. 103 (2006). In addition, in *Randolph,* both the husband and wife were physically present at the home and one was consenting to the search at the same time that the other one was refusing it. *Id*. Further, the *Randolph* opinion clearly states that it is not undercutting the law in *Matlock* and *Rodriguez*, but rather is "...drawing a fine line; if a potential defendant with self interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."

*Georgia v. Randolph*, 547 U.S. 103, 121 (2006).

In the case at hand, Diana Wilhelm had already given consent for the officers to come in to the apartment and search. Defendant Lindsay Wilhelm was upstairs at the time of the threshold colloquy. After the officers had been given consent to enter the apartment, Deputy Marshal Stump described the fugitive to the occupants in the living room. Diana Wilhelm and Christina Wilhelm immediately identified the man described to them as Defendant Lindsay Wilhelm's boyfriend and Christina Wilhelm indicated that he was upstairs.

The *Randolph* court, foresaw scenarios like the above and indicated by footnote that "Sometimes, of course, the very exchange of information, like this, in front of the objecting inhabitant may render consent irrelevant by creating an exigency that justifies immediate action on the police's part;..." *Georgia v. Randolph*, 547 U.S. 103, 117 n.6 (2006).

After learning that the fugitive from the armed robbery was upstairs, the officers had probable cause and exigent circumstances to proceed to the second floor to apprehend the fugitive who may have been armed and dangerous. Therefore, any objection by Lindsay Wilhelm at that point had no effect upon the officers authority to secure the safety of the occupants and the premises.

After the arrest of the Defendant Joshua Berkey, the officers performed a cursory search incident to arrest, which the Court finds to be proper. Thereafter a search warrant was obtained, which the Court also finds to have been properly issued and properly executed. The officers acted appropriately and within the confines of the law in this case.

**Decision**

It is hereby **RECOMMENDED** that **Defendant Berkey's Motion to Suppress Evidence**

**and Dismiss Indictment** [37] and **Defendant Wilhelm's Motion to Suppress Evidence[38]** is **DENIED.** The Defendants' objections to the ruling is duly noted.

**IT IS FURTHER ORDERED THAT:**

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court an original and two (2) copies of the written objections identifying the portions of the Order to which objection is made, and the basis for such objection. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to provide a copy of this Order to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 2-29-08

*[signature]*
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE